UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

HANCOCK BANK OF LOUISIANA

VERSUS

ADVOCATE FINANCIAL, LLC ET AL.

CIVIL ACTION

NUMBER 10-132-FJP-SCR

### RULING

This matter is before the Court on the Motion for Summary Judgment by Hancock Bank against La Chenaie, LLC on the main demand and counterclaim.[1] La Chenaie, LLC has opposed the motion.[2] For the reasons set forth below, the Court grants the motion for summary judgment.

Hancock Bank has provided a line of credit loan to Advocate since 2003 to enable it to expand its business of providing litigation-related financing to attorneys and law firms in Louisiana and throughout the southeast United States. A promissory note dated January 31, 2008, was executed by Advocate and payable to Hancock Bank in the principal amount of $10,000,000.00. As security for the original loan and later renewals, including the note, on April 10, 2003, Advocate executed a Commercial Security Agreement wherein it granted a first priority security interest

---

[1] Rec. Doc. No. 27.

[2] Rec. Doc. No. 33.

Doc#47010

over all of its chattel paper, accounts, notes, instruments, and general intangibles, and all related proceeds. With each renewal, extension or increase of the loan, Advocate also executed additional loan documents in favor of Hancock Bank, one of which was a Commercial Pledge Agreement, dated April 20, 2006, which granted Hancock Bank additional security protections over all of the paper collateral.

Hancock Bank filed an initial UCC-1 financing statement on May 2, 2003. After this UCC-1 lapsed, Hancock once again perfected its security interest in the Paper Collateral by recording a second UCC-1 financing statement on October 9, 2009, in Caddo Parish, Louisiana. As further security for the Note, La Chenaie (Advocate's sole owner) unconditionally guaranteed prompt payment of the Note and all indebtedness and obligations of any kind to Hancock Bank by executing a series of Commercial Guaranty Agreements ("the Guaranty") dated July 19, 2004; January 26, 2005; and April 20, 2006. La Chenaie also executed a First Amended and Restated Subordination Agreement on April 26, 2006, wherein La Chenaie expressly subordinated its right to collected the indebtedness owed to it by Advocate to Hancock Bank's rights under the Note. Advocate also expressly agreed to refrain from making any principal payments on the indebtedness it owed to La Chenaie while the Note remained outstanding.

Advocate and La Chenaie also executed a Fifth Amended and

Restated Business Loan Agreement on January 31, 2008, which restated and amended several earlier loan agreements and which governs the terms and conditions of the Loan to Advocate, as well as the scope of the obligations of Advocate and La Chenaie under the various documents described above.

In May of 2009, Advocated requested an extension of the maturity date of the Note to June 1, 2009, so it could have more time to compile information necessary to seek another renewal of the Loan. Hancock Bank granted this request, and the maturity of the Note was extended to August 1, 2009. As two additional extensions were granted, the Note's maturity date was ultimately extended to January 31, 2010.

Before the Final Maturity Date, Hancock Bank discovered several instances of default under the terms of the Loan Documents, some of which were: (1) unauthorized principal payments by Advocate to La Chenaie in violation of the Subordination Agreement; (2) Advocate's failure and refusal to promptly turn over possession of the Paper Collateral to Hancock Bank along with its refusal to allow Hancock to inspect documents relating thereto; (3) Advocate's failure and refusal to timely provide Hancock Bank with audited financial statements as required by the Loan Agreement; (4) Advocate's failure to timely provide monthly financial statements, monthly schedules of loan receivables, and quarterly receivable reports to Hancock Bank; and (5) Advocate's failure to maintain a

sufficient debt to equity ratio required by the Loan Agreement. The record reflects that Advocate failed to cure any of these defaults despite Hancock Bank's amicable demands. Further, Advocate's failure to pay the Note in full by the Final Maturity Date also constitutes default under the Note.

Hancock Bank filed suit against Advocate and La Chenaie seeking several forms of relief on February 2, 2010. On February 23, 2010, Advocate and La Chenaie removed the suit from the 19th Judicial District Court for the Parish of East Baton Rouge to this Court. On March 2, 2010, Advocate filed a Voluntary Petition in the United States Bankruptcy Court under Chapter 11 of the United States Code. The bankruptcy case, originally filed in the Eastern District of Louisiana, was transferred to the Middle District of Louisiana on May 25, 2010. While the suit against Advocate is subject to the automatic bankruptcy stay, the claims against La Chenaie as guarantor are not. Thus, Hancock has moved to establish La Chenaie's liability under the Guaranty for the indebtedness owed to Hancock Bank under the Note, and to dismiss the counterclaim raised by La Chenaie.

The Court now turns to a discussion of the facts of this case and applicable law.

I. **Hancock Bank is a Holder of a Perfected Security Interest in the Collateral**

La Chenaie relies on the same argument put forth by Advocate

Financial to the Bankruptcy Court that Hancock Bank was only authorized to file a single UCC-1 financing statement. This argument was already rejected by the Bankruptcy Court and is again rejected by this Court. When the original UCC-1 inadvertently lapsed, Hancock Bank duly filed a second UCC-1 financing statement on October 9, 2009, which it was allowed to do under law and contract. Louisiana Revised Statute 10-9-509(b)(Section 509 of the Uniform Commercial Code) provides that once a debtor executes a security agreement, the creditor is *ipso facto* authorized to file as many UCC-1 financing statements as it deems necessary to perfect its security interest. Further, the Loan Agreement and Commercial Security Agreement explicitly authorized Hancock Bank to file multiple UCC-1 financing statements to perfect its security interest.[3]

The Court also finds La Chenaie's arguments regarding the 2001 revisions to the Code to be without merit. The clear wording of official comment No. 3 under current Section 502 makes clear that all of the 402 exceptions were eliminated, not just certain ones. When read in conjunction with new Section 509, it is clear that creditors are still allowed to file as many financing statements as they desire once the debtor executes a security agreement granting

---

[3] See *In re Aliquippa Machine Co., Inc.*, 343 B.R. 145 (Bankr. W.D. Penn. 2006), wherein the court interpreted language identical to that in the loan documents in this case and supports this Court's conclusion.

the security interest.

La Chenaie cites no authority for its proposition that the Legislature enacted the revised Louisiana Commercial Code in 2001 with the express intent to prohibit the reperfection of a lapsed UCC-1, and the language in the current code does not evidence any such intent. The *Aliquippa* court also rejected the argument that under Section 509, which provides for the filing of "an" initial financing statement, a creditor may only file a single UCC-1. The court stated:

> The Court also finds to be without merit the Debtor's argument that, because 13 Pa.C.S.A. § 9509 only provides for the filing of an initial filing statement and amendments thereto, a secured party may not file a second financing statement in the event of a lapse of the first financing statement. The Court rejects such argument because (a) the term "Financing Statement" is defined in Pennsylvania's Article 9 to mean "[a] record or records composed of an initial financing statement and any filed record relating to the initial financing statement," 13 Pa.C.S.A. § 9102(a)(Purdon's 2006), and (b) neither § 9509 nor any other provision in Pennsylvania's Article 9 expressly or implicitly limits the number of financing statements that may be filed by a secured party. Therefore, Bank One, as a matter of law, was entitled to reperfect Bank One's Security Interest by filing a second financing statement. ....[4]

The Court notes that Sections 509 and 102 in Louisiana are practically identical to the Pennsylvania statues cited above.

---

[4] *In re Aliquippa*, 343 B.R. at 149 (internal citations omitted).

Thus, the Court finds that Hancock Bank was entitled to perfect its security interest again after the first UCC-1 lapsed. Further, Hancock Bank remains the holder of a perfected security interest in the Collateral.

**II. La Chenaie's Arguments under the Louisiana Civil Code are without merit**

The Court further finds that a review of the Guaranty agreements executed by La Chenaie confirms the holding that Hancock Bank maintains a security interest in the Collateral. Contracts of guaranty/suretyship are subject to the same rules of interpretation as contracts in general.[5] Louisiana law states that "[s]uretyship may be qualified, conditioned, or limited in any lawful manner."[6] Thus, Louisiana law expressly permits parties to contract to modify and/or limit the rights and remedies otherwise normally available to sureties under the Civil Code.[7] Both Louisiana and Fifth Circuit jurisprudence hold that, to the extent a guarantor contractually waives one of his rights under the Civil Code, he may not later escape liability under the guaranty on the basis that

---

[5] *Ferrell v. South Central Bell Telephone Co.*, 403 So.2d 698, 700 (La. 1981); *Eclipse Telecommunications Inc. v. Telnet Intern. Corp.*, 2001-0271, p.4 (La. App. 5 Cir. 10/17/01), 800 So.2d 1009, 1011.

[6] La. C.C. art. 3040.

[7] *First National Bank of Crowley v. Green Garden Processing Company, Inc.*, 387 So.2d 1070, 1073 (La. 1980)(citing La. C.C. art. 1901).

such right has been violated.[8]

During the life of the loan to Advocate, La Chenaie executed three separate Commercial Guaranty agreements in favor of Hancock Bank. In each agreement, La Chenaie explicitly agreed as follows:

> No course of dealing between Lender and Borrower ... nor any failure or delay on the part of the Lender to exercise any of the Lender's rights and remedies under the Guaranty or any other agreement or agreements by and between Lender and Borrower ... shall have the effect of impairing or releasing Guarantor's obligations and liabilities to Lender, or of waiving any of Lender's rights and remedies under this Guaranty or otherwise.[9]

La Chenaie also acknowledged the following:

> . . . Lender may, at its sole option, at any time ... without incurring any responsibility to Guarantor or to any other party, and without impairing or releasing any of Guarantor's obligations or liabilities under this Guaranty:
>
> \* \* \*
>
> (C) Sell, exchange, release, surrender, realize upon, or otherwise deal with, in any manner and in any order, any collateral directly or indirectly securing repayment of any of Borrower's indebtedness.[10]

La Chenaie also waived:

> (G) Any election of remedies by Lender that may destroy

---

[8] *Id.* at 1073-74; see also, *FDIC v. Gilbert*, 9 F.3d 393, 396-97 (5th Cir. 1993)(citing *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711 (5th Cir. 1985)).

[9] Page 2 of each Guaranty under Section entitled "NO IMPAIRMENT OF GUARANTOR'S OBLIGATIONS."

[10] Page 2 of each Guaranty under Section entitled "ADDITIONAL COVENANTS."

or impair Guarantor's subrogation rights or Guarantor's right to proceed for reimbursement against Borrower ... including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging Borrower's Indebtedness ... Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences, such waivers are reasonable and not contrary to public policy or law ...[11]

When these provisions are read together, it is clear that upon the execution of these agreements, La Chenaie knowingly waived whatever claims, defenses, and/or causes of action it may have had against Hancock Bank for allowing the initial UCC-1 to lapse. As Hancock has argued, "even if a temporary lapse of Hancock Bank's perfected security interest did somehow irrevocably prejudice La Chenaie's subrogation rights ..., the Guaranties prove that La Chenaie expressly waived its right to complain about any such impairment."[12] The Court agrees with this conclusion. Clearly, the terms of the Guaranty agreements specifically allow Hancock Bank to unilaterally release collateral and impair La Chenaie's subrogation rights while retaining La Chenaie's full liability under the Guaranty. The provisions set forth above undermine La Chenaie's arguments to the contrary.

Likewise, the cases cited by La Chenaie are distinguishable from the case at bar in that they either address instances where

---

[11]Page 1 of each Guaranty under Section entitled "GUARANTOR'S WAIVERS."

[12]Rec. Doc. No. —, pp. 7-8.

the creditor failed to ever perfect its security interests in the collateral or did not involve guaranty agreements wherein the guarantor's waiver/consent was expressly provided. In fact, the jurisprudence clearly shows that an express waiver or consent in a written agreement operates to deprive the guarantor of any cause of action against the lender.[13] Considering the clear and unambiguous terms of the Guaranty agreements along with the relevant jurisprudence, the arguments presented by La Chenaie are simply without merit and insufficient to defeat summary judgment in favor of Hancock Bank.

### III. Law of the Case Principles

The Court also notes that the arguments made by La Chenaie in this matter have already been argued to the Bankruptcy Court and rejected. While this action is independent from the bankruptcy matter, the "law of the case" principles are instructive in this case.[14] The UCC-1 claim advanced by Advocate and La Chenaie was fully considered and addressed by the Bankruptcy Court, which held that Hancock Bank maintained its security interest in Advocate's collateral. Thus, the claims made by La Chenaie in this matter are

---

[13] See *Louisiana National Leasing Corp. v. Family Pools*, 345 So.2d 480 (La. 1977); *First Bank & Trust Company, Palatine v. Post*, 293 N.E.2d 907 (Ill. App. 1973); and *First National Bank v. Haugen*, 219 N.W.2d 847 (N.D. 1974).

[14] See *Coliseum Square Association, Inc. v. Jackson*, 465 F.3d 215, 246 (5th Cir. 2006)(the law of the case doctrine "expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power").

likewise rejected for the same reasons set forth by the Bankruptcy Court.[15] Further, it is significant to note that Advocate's adversary proceeding against Hancock Bank has not been asserted as a preference action under 11 U.S.C. § 547. Because the second UCC-1 was filed outside of the 90 "look back" period under Section 547, Advocate has no preference claim arising out of Hancock Bank's second UCC-1. In fact, when considering the complaint filed by Advocate in the Bankruptcy Court, none of the claims for relief therein assert any elements of a preference action under Section 547. The same can be said of the arguments advanced by La Chenaie.

## IV. Conclusion

For the reasons set forth above, the Court finds that Hancock Bank is entitled to summary judgment on its main demand against La Chenaie in the amount of $7,311,066.59, plus additional default interest which shall continue to accrue on the unpaid principal balance at a default rate of 21% per annum until paid in full, plus additional attorneys' fees and costs that Hancock Bank may incur in enforcing the judgment, as well as any costs and fees that may accrue under the Note and Guaranty from August 1, 2010, going forward.

Hancock Bank is also entitled to summary judgment on the counterclaim by La Chenaie. The law is clear that Hancock Bank's

---

[15]See Transcript of the proceedings in the matter of *In re: Advocate Financial, LLC*, No. 10-10615, pp. 50-51.

security interest in Advocate's collateral is valid and Hancock Bank is a secured creditor. Therefore, La Chenaie's counterclaim is dismissed with prejudice.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

Baton Rouge, Louisiana, this 10 day of January, 2011.

						_____
						FRANK J. POLOZOLA
						MIDDLE DISTRICT OF LOUISIANA